IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

ACUITAS THERAPEUTICS INC.,
MICHAEL J. HOPE, STEVEN M.
ANSELL, AND XINYAO DU,

                    Plaintiffs,

              v.

ALNYLAM
PHARMACEUTICALS, INC.,

                  Defendant.

Civil Action No. 24-816-CFC

---

Melanie K. Sharp, James L. Higgins, and Stephanie N. Vangellow, YOUNG
CONAWAY STARGATT & TAYLOR, LLP, Wilmington, Delaware; Nicholas
Groombridge, Eric Alan Stone, Josephine Young, Allison C. Penfield, Ariella
Barel, Nisha Gera, and Chih-wei Wu, GROOMBRIDGE, WU, BAUGHMAN &
STONE LLP, New York, New York; Saurabh Gupta, GROOMBRIDGE, WU,
BAUGHMAN & STONE LLP, Washington, District of Columbia

        *Counsel for Plaintiffs*

Ethan H. Townsend, MCDERMOTT WILL & EMERY LLP, Wilmington,
Delaware; William G. Gaede, III, MCDERMOTT WILL & EMERY LLP, San
Francisco, California; Sarah Chapin Columbia, MCDERMOTT WILL & EMERY
LLP, Boston, Massachusetts; Mandy H. Kim, MCDERMOTT WILL & EMERY
LLP, Irvine, California; David J. Tobin, MCDERMOTT WILL & EMERY LLP,
Dallas, Texas

        *Counsel for Defendant*

## **MEMORANDUM OPINION**

July 1, 2025
Wilmington, Delaware

COLM F. CONNOLLY
CHIEF JUDGE

Plaintiffs Acuitas Therapeutics Inc. (Acuitas), Michael J. Hope, Steven M.

Ansell, and Xinyao Du have sued Defendant Alnylam Pharmaceuticals, Inc.

(Alnylam) under 35 U.S.C. § 256 for a judgment ordering the United States Patent

& Trademark Office (PTO) to correct the erroneous omission of Hope, Ansell, and

Du as named inventors of seven patents owned by Alnylam. The patents, which I

will refer to collectively as "the Alnylam Patents," are U.S. Patent Nos. 11,246,933

(the #933 Patent), 11,382,979 (the #979 Patent), 11,590,229 (the #229 Patent),

11,612,657 (the #657 Patent), 11,633,479 (the #479 Patent), 11,633,480 (the #480

Patent), and 11,679,158 (the #158 Patent). D.I. 1. Each of the Alnylam Patents

names the same nine individuals as inventors. *See* D.I. 1 ¶¶ 54, 67, 81, 93, 105,

117, 131. None of the Alnylam Patents identifies Hope, Ansell, or Du as an

inventor. *See* D.I. 1 ¶¶ 63, 77, 89, 101, 113, 127, 140. According to the

Complaint, however, "[e]ach claim" of the Alnylam Patents "recites elements that

cover inventions that Drs. Hope, Ansell, and Du conceived of and reduced to

practice." D.I. 1 ¶¶ 58, 71, 85, 97, 109, 121, 135.

Pending before me is Alnylam's motion to dismiss the Complaint pursuant

to Federal Rule of Civil Procedure 12(b)(1) for lack of jurisdiction and

Rule 12(b)(6) for failure to state a claim upon which relief can be granted. D.I. 12.

Because the motion challenges only the sufficiency of the pleaded allegations in the Complaint, I accept as true the factual allegations in the Complaint and draw all reasonable inferences from those allegations in Plaintiffs' favor. *See In re Horizon Healthcare Services Inc. Data Breach Litigation*, 846 F.3d 625, 633 (3d Cir. 2017) ("In reviewing facial challenges to standing [brought under Rule 12(b)(1)], [courts] apply the same standard as on review of a motion to dismiss under Rule 12(b)(6)."); *Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006) ("In reviewing a motion to dismiss [brought pursuant to Rule 12(b)(6)], [courts] accept all factual allegations in the complaint as true and view them in the light most favorable to the plaintiff.").

## I.

Alnylam argues first that "[t]he Complaint should be dismissed [pursuant to Rule 12(b)(1)] because the requirements for subject matter jurisdiction under 35 U.S.C. § 256[(b)] have not been met." D.I. 13 at 6. According to Alnylam, the Complaint does not meet § 256's requirements because it "does not plead that notice was provided to any of the nine named inventors and it does not name any of the nine inventors as parties." D.I. 13 at 6 (italics removed and citation omitted). Section 256(b), however, has no such pleading or naming requirements. More to the point, § 256 neither creates jurisdiction nor imposes jurisdictional requirements. Section 256 creates a cause of action. *See MCV, Inc. v. King-Seeley*

2

*Thermos Co.*, 870 F.2d 1568, 1570 (Fed. Cir. 1989) ("[A] cause of action is created

by section 256 which explicitly authorizes judicial resolution of co-inventorship

contests over issued patents."), *overruled on other grounds by A.C. Aukerman Co.*

*v. R.L. Chaides Constr. Co.*, 960 F.2d 1020, 1042 (Fed. Cir. 1992) (en banc),

*abrogated on other grounds by SCA Hygiene Prods. Aktiebolag v. First Quality*

*Baby Prods., LLC*, 580 U.S. 328, 332 (2017)[1]; *id.* at 1571 ("MCV's cause of action

is for correction of inventorship . . . and is created by section 256."). Section

1338(a) creates this Court's jurisdiction over this action. *See* 35 U.S.C. § 1338(a)

("The district courts shall have original jurisdiction of any civil action arising

under any Act of Congress relating to patents . . .").

   Section 256(b) reads:

> The error of omitting inventors or naming persons who
> are not inventors shall not invalidate the patent in which
> such error occurred if it can be corrected as provided in
> this section. The court before which such matter is called
> in question may order correction of the patent on notice
> and hearing of all parties concerned and the Director
> shall issue a certificate accordingly.

35 U.S.C. § 256(b). Nothing in the statute requires a plaintiff to give notice to any

party before filing a complaint to correct the omission of an inventor in a patent, let

---

[1] The Federal Circuit noted in *Ferring B.V. v. Allergan, Inc.*, 980 F.3d 841, 851
(Fed. Cir. 2020) that "[t]his court subsequently overruled" *MCV*'s application of "a
formulation of equitable estoppel" in *A.C. Aukerman Co.*

alone to plead in the complaint that such notice had been provided.  Nor does anything in the statute require a plaintiff to identify any named inventors in the patent as parties in the complaint.  The statute merely provides that the "matter" of an "error of omitting inventors or naming persons who are not inventors" can be brought in a district court, and the plain language of the statute requires only that notice of "such [a] matter" and an opportunity to be heard be given to all concerned parties before the court orders the PTO to correct the alleged error.

Alnylam insists that § 256's notice and hearing requirements are "jurisdictional requirements" that must be established before the case can proceed.  D.I. 19 at 2; *see also* D.I. 13 at 4 ("For an action under 35 U.S.C. § 256, subject matter jurisdiction requires [sic] that 'notice' be provided to 'all parties concerned.'").  In support of this argument, Alnylam cites the following two sentences from *MCV*:

> The statute [Section 256] prescribes only one prerequisite to judicial action: all parties must be given notice and an opportunity to be heard.  *If that is done, there is subject-matter jurisdiction in the district court* over a dispute raising solely a joint inventorship issue among contending co-inventors.

D.I. 13 at 5 (quoting *MCV*, 870 F.3d at 1570) (alteration in the original) (emphasis added).

I do not, however, read the statement in *MCV* that "[i]f that is done, there is subject matter jurisdiction" to mean that a district court lacks subject-matter

jurisdiction to entertain a § 256 action unless and until all concerned parties have

been given notice and an opportunity to be heard. *MCV* was written in 1989. As

the Supreme Court noted in 2006:

> On the subject-matter jurisdiction/ingredient-of-claim-
> for-relief dichotomy, this Court and others have been less
> than meticulous. Subject matter jurisdiction in federal-
> question cases is sometimes erroneously conflated with a
> plaintiff's need and ability to prove the defendant bound
> by the federal law asserted as the predicate for relief—a
> merits-related determination. Judicial opinions . . . often
> obscure the issue by stating that the court is dismissing
> 'for lack of jurisdiction' when some threshold fact has
> not been established, without explicitly considering
> whether the dismissal should be for lack of subject matter
> jurisdiction or for failure to state a claim. We have
> described such unrefined dispositions as "drive-by
> jurisdictional rulings" that should be accorded no
> precedential effect on the question whether the federal
> court had authority to adjudicate the claim in suit.

*Arbaugh v. Y&H Corp.*, 546 U.S. 500, 511 (2006) (citations and some internal

quotation marks omitted). I view the language in *MCV* relied upon by Alnylam to

be the type of "less[-]than[-]meticulous" wording that *Arbaugh* says "should be

accorded no precedential effect." I reach this conclusion for four reasons.

First, and as noted above, the court in *MCV* twice stated that § 256

"create[s]" a "cause of action." 870 F.2d at 1570, 1571. Second, the opening two

sentences of the "Discussion" section of *MCV* make clear that the Federal Circuit

understood that a district court's jurisdiction over a § 256 action is conferred by

§ 1338(a):

> The first question is jurisdiction: Is a suit in district court
> for determination of co-inventorship and correction of a
> patent under 35 U.S.C. § 256 permissible, *and is it an
> action "arising under" the patent laws for purposes of
> 28 U.S.C. § 1338(a)* so that we have jurisdiction under 28
> U.S.C. § 1295(a)(1)? The answer is yes.

*Id.* (emphasis added).[2] Third, § 256 imposes *two* procedural requirements: notice

and a hearing. It makes no sense to say that a court lacks jurisdiction—i.e., it lacks

the "power to hear a case," *Arbaugh*, 546 U.S. at 514—until the court has a hearing

in the case. Fourth and finally, the Federal Circuit has cited *MCV* on numerous

occasions for the proposition that § 256 creates a cause of action. *See, e.g., Shum

v. Intel Corp.*, 499 F.3d 1272, 1277 (Fed. Cir. 2007) (citing *MCV* for proposition

that "[a] correction for inventorship claim under section 256 creates a cause of

action in federal courts that authorizes a district court to resolve inventorship

disputes over issued patents"); *Chou v. Univ. of Chicago*, 254 F.3d 1347, 1357

(Fed. Cir. 2001) (citing *MCV* for proposition that "[s]ection 256 of title 35 provides

a cause of action for judicial correction of inventorship."); *Fina Oil & Chem.

Co. v. Ewen*, 123 F.3d 1466, 1471 (Fed. Cir. 1997) (citing *MCV* for proposition

that § 256 "provides a cause of action to interested parties to have the inventorship

---

[2] Section 1295(a)(1) provides in relevant part that "[t]he United States Court of Appeals for the Federal Circuit shall have exclusive jurisdiction of an appeal from a final decision of a district court of the United States . . . in any civil action arising under . . . any Act of Congress relating to patents." 28 U.S.C. § 1295(a)(1).

6

of a patent changed to reflect the true inventors of the subject matter claimed in the patent" and "[a] patentee or its assignee may *state a claim* under this section even where there is not a consensus on the correct inventorship as long as all parties are given notice and an opportunity to be heard") (emphasis added); but Alnylam does not identify, and I am not aware of, any Federal Circuit decision that cites *MCV* for the proposition that § 256 creates subject matter jurisdiction.

Accordingly, I reject Alnylam's argument that § 256 imposes jurisdictional requirements, and I will deny its motion to dismiss for lack of jurisdiction insofar as it is based on alleged failures by Plaintiffs to comply with § 256's procedural requirements.

## II.

Alnylam next argues that I lack jurisdiction because Plaintiffs lack standing to bring this action. D.I. 13 at 6–7.

Article III of the Constitution limits the jurisdiction of federal courts to "Cases" and "Controversies, and standing is "an essential and unchanging part" of this "case-or-controversy requirement." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 559, 560 (1992). When the court's subject matter jurisdiction is challenged pursuant to Rule 12(b)(1), the plaintiff bears the burden of demonstrating standing. *Ortho Pharm. Corp. v. Genetics Inst.*, 52 F.3d 1026, 1032–33 (Fed. Cir. 1995). To meet that burden, the plaintiff must allege "personal injury fairly traceable to the

defendant's allegedly unlawful conduct and likely to be redressed by the requested relief." *Allen v. Wright*, 468 U.S. 737, 751 (1984). The injury must be "an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical." *Lujan*, 504 U.S. at 560 (internal quotation marks and citations omitted).

Plaintiffs argue that Hope, Ansell, and Du have Article III standing because "each has a financial and a reputational interest in the [Alnylam Patents]." D.I. 17 at 16 (citing D.I. 1 ¶¶ 1, 2, 10, 12, 16, 18–19, 25, 29, 48–50 and D.I. 17 § III.A).[3] But the twenty-five paragraphs in the Complaint they cite in support of this contention do not plausibly imply that Hope, Ansell, or Du has a concrete and particularized financial or reputational interest in the outcome of this action.

Paragraph 1 of the Complaint alleges merely that "companies across the world have come forward to claim that they invented the technology used in th[e] [mRNA COVID] vaccines without necessarily having a proper basis" to make that claim. D.I. 1 ¶ 1. Paragraph 2 alleges that Alnylam has publicly taken credit for inventing technology used in the COVID vaccine that was "developed" by Pfizer, BioNTech, and Acuitas (the Pfizer vaccine). D.I. 1 ¶ 2. Paragraph 2 further

---

[3] Section III.A of Plaintiffs' Answering Brief (D.I. 17) cites paragraphs 1–2, 8–13, 16–19, 25, 29, 42–52 of the Complaint for the proposition that "[t]he Complaint also alleges that each Omitted Inventor suffers 'reputational and economic harm' from not being recognized as an inventor on [Alnylam Patents]." *See* D.I. 17 at 6.

8

alleges that Alnylam "has gone so far as to sue BioNTech and Pfizer for infringing six [of the Alnylam Patents] that [Alnylam] claims cover th[e] [Pfizer] vaccine." D.I. 1 ¶ 2.

Paragraph 8 of the Complaint alleges that "Alnylam's choice to patent, on its own, the work that it had done in collaboration with Acuitas initially posed little reputational or financial harm to Acuitas or its scientists" and "[f]or years, Alnylam sought claims [in patents] that had nothing to do with mRNA formulations or the work that Acuitas had gone on to pioneer." D.I. 1 ¶ 8. Paragraph 8 further alleges that Alnylam obtained three patents before the COVID-19 pandemic that "have nothing to do with mRNA vaccines." D.I. 1 ¶ 8. None of these three patents is among the Alnylam Patents. *See* D.I. 1 ¶ 8. Paragraph 9 alleges that the compound claimed in one of these three patents is "vastly different" from "the cognate component" in the Pfizer vaccine. D.I. 1 ¶ 9.

Paragraph 10 of the Complaint alleges that after the United States Food and Drug Administration (FDA) authorized the Pfizer vaccine and the structure of lipids and lipid nanoparticles used in that vaccine had become public, Alnylam added new claims to then-pending patent applications to cover the Pfizer vaccine. Paragraph 10 further alleges that the additional claims in effect "claimed that all the way back in 2011 [when Alnylam first filed the patent applications] it (and it alone) had invented thousands or hundreds of thousands of cationic lipids like the

9

one in [the Pfizer vaccine]." D.I. 1 ¶ 10. Paragraph 11 alleges that "any work that

Alnylam contributed to the current mRNA vaccines . . . is work that Alnylam did

in collaboration with and under the tutelage of the Acuitas Scientists," and that

"Acuitas and its scientists cannot simply sit idly by while Alnylam takes credit for

work in which, if it was a participant at all, it was a participant hand-in-hand with

Acuitas." D.I. 1 ¶ 11.

Paragraph 12 of the Complaint alleges that in 2022 and 2023, Alnylam sued

BioNTech and Pfizer for infringing six of the Alnylam Patents; that BioNTech and

Pfizer are Acuitas's partners and "are operating under license from Acuitas"; that

Alnylam "took claim construction positions" in the patent infringement suits "that

made clear that the claims" of the six Alnylam patents were "co-invented and co-

developed" by Hope, Ansell, and Du; that, "[b]ut for Alnylam's omission of

[Hope, Ansell, and Du] as inventors on the [six Alnylam Patents] Alnylam could

not accuse BioNTech and Pfizer of infringing th[ose] patents without joining co-

owner Acuitas as a plaintiff"; and that Acuitas "has no intention of asserting" the

Alnylam Patents against BioNTech or Pfizer. D.I. 1 ¶ 12. Paragraph 13 alleges

only that "Plaintiffs seek correction of the inventorship of the [Alnylam Patents]"

and the addition of Hope, Ansell, and Du as joint inventors pursuant to 35 U.S.C.

§ 256. D.I. 1 ¶ 13.

Paragraph 16 alleges that Acuitas has a "business model" of "pioneer[ing] the research and development of lipids" and "collaborat[ing] with" and providing licenses to partners "to create novel mRNA therapeutics." D.I. 1 ¶ 16. Paragraph 17 discusses the structure of Acuitas's lipid nanoparticles and alleges that "Acuitas's research has always focused on the design, synthesis, and characterization" of novel ionizable cationic lipids and related lipid nanoparticle formulations to improve delivery of "nucleic acid payloads." D.I. 1 ¶ 17. Paragraph 18 alleges that Hope, Ansell, and Du "are pioneering scientists in the lipid and [lipid nanoparticle] technology field," that they "previously worked at Acuitas for many years," that they "continue[] to be associated with Acuitas," and that "[i]n their work for Acuitas, they conceived of, designed, synthesized, and characterized hundreds of ionizable cationic lipids for use in [lipid nanoparticles] that encapsulate mRNA." D.I. 1 ¶ 18.

Paragraph 19 alleges that Hope, Ansell, and Du are the inventors on numerous patents claiming lipids and lipid nanoparticles and "are each recognized and respected for their scientific contributions"; that "[i]n omitting Drs. Hope, Ansell, and Du from the [Alnylam Patents], Alnylam attributes their groundbreaking achievements to others"; that "Alnylam's failure to credit Drs. Hope, Ansell, and Du as co-inventors of the [Alnylam Patents] now causes them, and Acuitas itself, reputational and economic harm"; that "Acuitas owns the rights

11

that Drs. Hope, Ansell, and Du have as inventors of the [Alnylam Patents]"; that "[i]n omitting Drs. Hope, Ansell, and Du as inventors on the [Alnylam Patents], not only have [Hope, Ansell, and Du] been deprived of proper attribution for their work, [but] Acuitas is being deprived of recognition of its ownership of the [Alnylam Patents] and its rights to prevent its own partners from being sued by its former partner, Alnylam." D.I. 1 ¶ 19.

Paragraph 25 alleges that "Acuitas's scientists, including Drs. Hope, Ansell, and Du, transformed the field of [lipid nanoparticle] technology, and the ionizable cationic lipids contained in [lipid nanoparticles]" "based on decades of hard work and after painstaking design and testing of hundreds of lipids." D.I. 1 ¶ 25. Paragraph 29 alleges that Hope and two other scientists (not Ansell or Du) "collaborated with Alnylam" and that Alnylam "depended on the expertise" of Hope and these two scientists because Alnylam "did not employ any scientists that were experienced with lipid synthesis and [lipid nanoparticles]." D.I. 1 ¶ 29.

Paragraph 42 alleges that in 2011, based on its collaboration with Acuitas scientists, Alnylam filed several patent applications, including one patent application that named Ansell and Du as inventors (the #121 Application). D.I. 1 ¶ 42. Paragraphs 42, 43, and 44 allege that the #121 Application and a patent that issued from it—the #247 Patent—disclosed numerous "ionizable cationic lipids" that were designed and synthesized by Ansell and Du. D.I. 1 ¶¶ 42, 43, 44.

12

Paragraph 45 alleges that Alnylam filed two patent applications in 2011 and 2012 that "named only Alnylam scientists as inventors" and disclosed cationic lipids that Alnylam scientists had synthesized during Alnylam's collaboration with Acuitas. D.I. 1 ¶ 45.

Paragraph 46 alleges that by early 2012 "Alnylam had dwindling resources and had decided on a change in strategic priorities," shifting "its research efforts into non-[lipid nanoparticle] delivery methods for siRNA" and "terminat[ing] [its] Acuitas collaboration around July 2012." D.I. 1 ¶ 46. Paragraph 47 alleges that "Acuitas, on the other hand, continued to develop ionizable cationic lipids and [lipid nanoparticle] technology" and focused its work on messenger RNA after ending its collaboration with Alnylam. D.I. 1 ¶ 47. Paragraph 47 further alleges that Acuitas scientists Drs. Madden and Hope "set about development of methods to effectively load mRNA inside [lipid nanoparticle compositions]" to "efficiently and safely deliver the mRNA inside cells." D.I. 1 ¶ 47.

Paragraph 48 alleges that Acuitas is a "world leader" in lipid nanoparticle technology; that it has "invented hundreds of novel lipids and thousands of [lipid nanoparticles]"; that it has collaborated with partners to develop novel mRNA-lipid nanoparticles for vaccines and other therapeutics; and that it, BioNTech, and Pfizer jointly "developed" Pfizer's COVID vaccine. D.I. 1 ¶ 48. Paragraph 49 alleges that "Alnylam did not collaborate with Acuitas [i]n the development of

13

mRNA-[lipid nanoparticles] or [the Pfizer vaccine]"; that Alnylam also did not "collaborate with Moderna to develop Moderna's mRNA-[lipid nanoparticle vaccine]"; that "Alnylam mined its patent portfolio to see if it could draft claims to cover [the Pfizer and Moderna vaccines]"; that those "mining" and drafting efforts resulted in the issuance of the Alnylam Patents; and that "[a]t present, Plaintiffs have both reputational and financial interests in connection with each of the [Alnylam Patents]." D.I. 1 ¶ 49.

Paragraph 50 discusses the elements of the claims of the Alnylam Patents and alleges that the cationic lipids and lipid particles covered by the claims "were conceived of, invented, and developed by Acuitas's scientists Drs. Hope, Ansell, and Du" and that the Alnylam Patents "omit Drs. Hope, Ansell, and Du as co-inventors." D.I. 1 ¶ 50. Paragraph 51 alleges that "the United States Patent Office determined that the claims of [one of the Alnylam Patents] are not patentably distinct from the claims of . . . the [#]247 patent" and "issued a double patenting rejection." D.I. 1 ¶ 51. Paragraph 52 alleges that in response to that rejection, Alnylam filed a statutory disclaimer pursuant to 35 U.S.C. § 253 to disclaim certain claims of the #247 patent. D.I. 1 ¶ 52.

Thus, the Complaint does not allege any *facts* relating to financial or reputational injury that could be addressed by adding Hope, Ansell, and Du as co-inventors of the Alnylam Patents. With respect to financial injury, the Complaint

14

contains only the conclusory allegation in paragraph 19 that "Alnylam's failure to credit Drs. Hope, Ansell, and Du as co-inventors of the [Alnylam Patents] now causes them . . . economic harm" and the conclusory allegation in paragraph 49 that "[a]t present, Plaintiffs have . . . financial interests in connection with each of the [Alnylam Patents]." D.I. 1 ¶¶ 19, 49. With respect to reputational injury, the Complaint contains only (1) the conclusory allegations in paragraph 19 that "Alnylam's failure to credit Drs. Hope, Ansell, and Du as co-inventors of the [Alnylam Patents] now causes them . . . reputational . . . harm" and that the omission of them as co-inventors has "deprived [them] of proper attribution for their work," D.I. 1 ¶ 19; and (2) the conclusory allegation in paragraph 49 that "[a]t present, Plaintiffs have [ ] reputational . . . interests in connection with each of the [Alnylam Patents]," D.I. 1 ¶ 49.

Such conclusory allegations are insufficient to show that the omission of Hope, Ansell, and Du as co-inventors of the Alnylam Patents has caused or will cause them to suffer a concrete and particularized financial or reputational injury. I will therefore dismiss Hope, Ansell, and Du's claims for lack of jurisdiction. *See Kamdem-Ouaffo v. PepsiCo Inc.*, 657 F. App'x 949, 954 (Fed. Cir. 2016) (affirming district court's dismissal of § 256 action for lack of Article III standing because "bare assertion that 'Plaintiff sustains and/or might sustain damages in terms of the loss of the ownership, inventorship, recognition, and the honor for

15

his . . . Intellectual Property'" was insufficient to plead the "concrete and

particularized" injury required for standing under *Lujan*); *Huster v. j2 Cloud*

*Servs., Inc.*, 682 F. App'x 910, 914, 916 (Fed. Cir. 2017) (affirming district court's

dismissal of § 256 action for lack of Article III standing where plaintiff "did not

allege sufficient facts to establish an economic interest in obtaining inventorship or

co-inventorship status" and "d[id] not allege any facts relating to a reputational

injury").

I will also dismiss Acuitas's claims. Plaintiffs argue that Acuitas has

standing to bring its § 256 claims because "[t]he Complaint adequately pleads that

[it] has an ownership interest in the [Alnylam Patents]." D.I. 17 at 14 (citing D.I. 1

¶¶ 12, 18–19 and D.I. 17 § III.A).[4] But the three paragraphs in the Complaint they

cite in support of this contention—paragraphs 12, 18, and 19—do not allege facts

that plausibly imply this legal conclusion. Paragraphs 12 and 18 allege at most that

the Alnylam Patents claim cationic lipids and lipid nanoparticles co-invented and

co-developed by Hope, Ansell, and Du when they were employed by Acuitas.

D.I. 1 ¶¶ 12, 18. Paragraph 19 alleges that "Acuitas owns the rights that Drs.

---

[4] Plaintiffs state in Section III.A of their Answering Brief (D.I. 17) that "[t]he Complaint alleges that Acuitas has an ownership interest in the [Alnylam Patents] because Acuitas owns each Omitted Inventors' rights in the Patents-in-Suit once inventorship is corrected" and "Alnylam's claim to sole ownership of the [Alnylam Patents] deprives Acuitas of its co-ownership rights in deciding who and whether to sue for infringement." D.I. 17 at 5 (citing D.I. 1 ¶¶ 12, 18–19).

Hope, Ansell, and Du have as inventors of the [Alnylam Patents]." D.I. 1 ¶ 19.
The Complaint, however, does not allege that Hope, Ansell, or Du ever possessed
ownership rights in the Alnylam Patents. Thus, Acuitas has failed to meet its
burden to allege a concrete and particularized injury that would give it standing to
pursue this § 256 action.

III.

For the reasons discussed above, I will grant in part and deny in part
Alnylam's motion. I will deny the motion insofar as it seeks dismissal under
Rule 12(b)(1) for failure to comply with the procedural requirements of § 256. I
will grant the motion insofar as it seeks dismissal under Rule 12(b)(1) for lack of
Article III standing; and I will dismiss the case without prejudice for lack of
jurisdiction, *Aldossari on Behalf of Aldossari v. Ripp*, 49 F.4th 236, 262
(3d Cir. 2022). I will deny the motion in all other respects as moot.

The Court will enter an Order consistent with the Memorandum Opinion.